**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Testwell, Inc.*
*Debtor and Debtor-in-Possession*
1350 Broadway
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq. (SSM-0849)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                                    Chapter 11

TESTWELL, INC.                                                Case No. 09-22796 (RDD)

                                    Debtor.
------------------------------------------------------------X

## MOTION TO USE TD BANK'S CASH COLLATERAL

TO:   THE HONORABLE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE

The motion (the "Motion") of Testwell, Inc., as debtor and debtor-in-possession ("Testwell" or "Debtor"), respectively represents and alleges the following in support of its request to use TD Bank, N.A's ("TD Bank") cash collateral:

### INTRODUCTION

1.   On May 13, 2009, (the "Filing Date"), the Debtor filed a voluntary petition for reorganization under Title 11, Chapter 11, §301 of the United States Bankruptcy Code (the "Bankruptcy Code") and intends to continue in the operation of its business as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2.   The Debtor is engaged in the controlled inspections and material testing business relating to the construction business. The Debtor has been in operation since 1967. Current ownership acquired the business in 1997. During the year ending December 31, 2008, the Debtor generated gross revenues of $20,000,000.00. During the year ending December 31, 2007, the Debtor had gross revenues of approximately $24,000,000.00.

{Client\003018\BANK154\00194212.DOC;1}

3. Prior to the Filing Date, the Debtor entered into two loans with Commerce Bank (which was acquired by TD Bank) which the Debtor utilized to fund its business operations. The Debtor has a term loan and a revolving loan. The original loan in the sum of $5,000,000.00 was made in 2003. In or about March 2006, this $5,000,000.00 loan was converted into a term loan. At that time, the amount outstanding was approximately $4,600,000.00.

4. In or about September 2007, the Debtor and TD Bank entered into a second loan agreement pursuant to which TD Bank agreed to make up to $2,500,000.00 of additional financing pursuant to a formula.

5. Both of the loans were secured by properly filed UCC-1's and the Debtor executed a security agreement granting TD Bank a lien on substantially all of its assets including its accounts receivables. TD Bank was also granted a second mortgage on the real property located at 47 Hudson Street, Ossining, New York, where the Debtor operates its business. The loans were also personally guaranteed by the Debtor's sole shareholder, V. Reddy Kancharla ("Kancharla").

6. On October 30, 2008, the New York County District Attorney's Office ("DA's Office") announced that it had issued indictments (the "Indictments") charging the Debtor, Kancharla and other current and former employees with among other things, "enterprise corruption" in violation of New York Penal Law §420.201(1)(a), grand larceny, and falsifying business records. Both the Debtor and Kancharla pled not guilty and are vigorously contesting the allegations contained in the Indictments. A motion to dismiss the Indictments, in whole or in part, are scheduled to be heard by the criminal court in or about June 18, 2009.

7. In connection with the Indictments, the DA's Office commenced a civil forfeiture action (pursuant to Article 13-A of the C.P.L.R.) against the Debtor in the Supreme Court, New York County (the "Forfeiture Action").

8. In the Forfeiture Action, the DA's Office obtained a temporary restraining order

("TRO") against Testwell and Kancharla which restrains the Debtor's assets which consist of the proceeds of collection of its accounts receivable. The TRO also restrained TD Bank from exercising its Article 9 enforcement rights. As of May 13, 2009, the Debtor had approximately $1,200,000.00 on deposit with HSBC Bank which is subject to the state court TRO.

9. Since the Indictments, the Debtor has continued to operate its business on a reduced basis. Since November 2008, the Debtor has funded its operations by obtaining consent from the DA's Office (mostly over the objection of TD Bank) to utilize its cash to pay its necessary operating expenses. Recently, however, TD Bank refused consent to release of monies for operating expenses which caused the DA's Office to likewise decline to approve the release of monies from the HSBC account.

10. Recently, at the request of the DA's Office, the state court judge presiding over the Forfeiture Action signed an order which permits TD Bank to proceed with its Article 9 foreclosure action in the United States District Court for the Southern District of New York. The Debtor is appealing this order, and the entry of this order is the immediate cause of the Debtor seeking relief in this Court. TD Bank has advised the Debtor that it intends to seek provisional relief in the foreclosure action and a hearing to appoint a receiver has been scheduled by the District Court.

11. Currently, TD Bank is owed approximately $3,900,000.00 on account of both loans. Up until recently, when the DA's Office declined to release April's operating expenses, the Debtor was current with TD Bank under both loans. The loans are secured by assets well in excess of the outstanding balance on the loans. The Debtor has accounts receivable of approximately $10,000,000.00, although approximately 50% of the accounts are quite old, the Debtor believes that a substantial portion are collectible and will commence appropriate collection actions in this Court to collect the monies due it. Upon information and belief, TD Bank obtained a recent appraisal of the real estate upon which it has both in first and second mortgage and there is at least

{Client\002540\BANK119\00160491.DOC;1}

3

$1,000,000.00 equity above the mortgages.

## RELIEF SOUGHT AND BASIS THEREFOR

12. By this emergency Motion, the Debtor seeks authorization from this court to utilize the TD Bank's cash collateral in order to continue in the reorganization process pending a final hearing on this Motion. The Debtor requests emergency authorization to use TD Bank's cash collateral for the purpose of meeting its payroll[1] and other necessary operating expenses from the Filing Date through the final hearing.

13. Prior to the Filing Date, the Debtor obtained its working capital by collecting its accounts receivable and utilizing the funds to pay its ordinary operating expenses. The only way for the Debtor to operate is to collect and utilize its accounts receivable.

14. If the Debtor is not permitted to collect its accounts receivable and utilize said funds to operate its business, the Debtor will immediately cease operations, causing significant harm to its employees as well as its unsecured creditors. The Debtor is in the middle of several projects which if not completed will seriously impair the collectability of its receivables. The Debtor is in need of an emergency hearing on this Motion if the precipitous closing down of operations and the consequence of immediate and irreparable harm are to be avoided.

## IF THE DEBTOR IS AUTHORIZED TO USE TD BANK'S CASH COLLATERAL, ALL CONSTITUENTS, INCLUDING TD BANK, WILL BENEFIT AND TD BANK WILL BE ADEQUATELY PROTECTED

15. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, authorizes the use of cash collateral. Although the Debtor will attempt to

---

[1] The Debtor has not been able to meet its payroll since May 1, 2009 as a result of the DA's Office and TD Bank's refusal to consent to the release of the funds from the HSBC account. The Debtor is simultaneously filing a motion to pay pre-petition payroll.

negotiate the terms of a cash collateral stipulation with TD Bank, due to the emergency nature of the Chapter 11 filing, the Debtor has been unable to negotiate such a stipulation as of the date of this Motion.[2]

16. Since the Debtor does not have the TD Bank's express consent to use cash collateral at this time, the Debtor seeks authorization from this court to use TD Bank's cash collateral.

17. As of the Filing Date, the Debtor owes TD Bank approximately $3,900,000.00, on account of both loans. TD Bank's loans are collateralized by the Debtor's accounts receivable and equipment, as well as a second lien on certain real estate which has at least $1,000,000.00 in equity. Currently, the Debtor has approximately $10,000,000.00 in accounts receivable which the Debtor believes most will be collectible. TD Bank also has a lien on all of the Debtor's equipment which has a value of at least $750,000.00. In addition, TD Bank has Kancharla's personal guaranty. In short, TD Bank is substantially over collateralized taking into account the Debtor's assets and the building without the guaranty.

18. If this court authorizes the Debtor to utilize TD Bank's cash collateral, TD Bank will be adequately protected. As adequate protection, the Debtor will provide TD Bank with a replacement lien on its post-petition assets in the same category that TD Bank had a lien on prior to the Filing Date. In addition, the Debtor proposes to pay TD Bank $800,000.00 from the HSBC account as an immediate pay down of the loans. Since the Debtor will use the cash collateral to generate profits over the long run, TD Bank will be adequately protected by the replacement lien as well as the periodic monthly adequate protection payments. See, In re Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993).

19. Although §361 of the Bankruptcy Code does not define adequate protection, it does

---

[2] The Debtor has spoken to TD Bank's counsel and will attempt to obtain an interim cash

set forth three (3) non-exclusive examples of adequate protection. One of the examples specifically set forth in §361 of the Bankruptcy Code is periodic cash payments and another is a replacement lien. The Debtor is willing to provide TD Bank with both to assure that it is adequately protected for the use of its cash collateral.

20. In addition, to the methods of adequate protection set forth above, the Debtor submits that TD Bank is adequately protected because they are over-collateralized. As long as TD Bank is given a replacement lien, TD Bank will have a sufficient "equity cushion." Several bankruptcy courts as well as higher courts have held that an "equity cushion" can constitute adequate protection. In re Mellor, 734 F. 2d 1396, 1400 (9th Cir. 1984); In re Shapiro 109 B.R. 127 (Bankr. E.D. Pa. 1990). In addition, courts have held that appreciating collateral may itself constitute adequate protection. First National v. Dahlquist 34 B.R. 476 (Bankr. D.S.D. 1983). Since TD Bank will be given a replacement lien and the Debtor will be able to increase, or at least not materially decrease, the collateral base through the continued operation of its business and the use of TD Bank's cash collateral, TD Bank's interest in the cash collateral will be adequately protected.

21. Kancharla's guaranty is also relevant to the issue of adequate protection. Several courts have held that an unsecured guaranty from a credit worthy source can constitute a component of adequate protection. LaSalle National Bank v. Harrow Leasing Corp., 35 B.R. 916 (Bankr. E.D. Pa. 1983); In re Belmont Realty Corp., 113 B.R. 118 (Bankr. D.R.I. 1990). Kancharla is a credit-worthy individual who has generally paid his debts and his personal guarantees further protect TD Bank.

22. It is the Debtor's burden of proof to show adequate protection. The burden of proof is by a preponderance of the evidence. See, §363(o) of the Bankruptcy Code. In re Glastream

---

collateral agreement prior to the preliminary hearing.

Boats, Inc., 110 B.R. 611 (Bankr. M.D. Ga. 1990); Grogan v. Garner, 498 U.S. 279 (1991). In the instant case, the Debtor will be able to demonstrate based upon the above detailed factors that TD Bank will be adequately protected for use of its cash collateral. As the Tenth Circuit Court of Appeals stated, in In re O'Connor, 808 F.2d 1393 (10th Cir. 1987),

> "Because the ultimate benefit to be achieved by a successful reorganization under Chapter 11 inures to all Creditors, a fair opportunity must be given to a debtor to achieve that end, while the interest of a secured creditor's property rights must of concern to the courts, interests of all other creditors also have a bearing upon the question of whether use of cash collateral shall be permitted."

23. One of the best bankruptcy court opinions discussing the issues which frequently arise in a motion to use cash collateral when the collateral consists of receivables (cycling soft collateral) is In re Dynaco, 162 B.R. 389 (Bankr. D.N.H. 1993 Yacos, B.J.). In, In re Dynaco, supra, the court held that the appropriate inquiry is for the court to determine that the collateral level which is always floating by nature will remain at the same magnitude during the relevant period of debtor-in-possession business operations. The Court went on to state that the Court should not take a "snap shot" showing a fluctuation downward, during one select period of business operations, but, rather, a "motion picture" showing the soft collateral will not suffer material decline over time. In the instant case, the Debtor will be able to show through analyzing past results and through testimony that if the court authorizes the Debtor to use cash collateral for the next ninety (90) days, the collateral base will not decline and will, in fact, remain relatively stable. Therefore, TD Bank's interest in the cash collateral will be adequately protected. See, In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982).

24. Finally, aside from the forms of adequate protection detailed above, the Debtor will provide TD Bank with whatever reports the court deems reasonable and this matter can be scheduled for a status conference periodically in order to keep a close watch on the Debtor's progress. The Debtor also intends to retain a chief restructuring officer who will report regularly to

TD Bank.

## THE MONIES IN THE HSBC ACCOUNT ARE PROPERTY OF THE DEBTOR'S ESTATE AND SUBJECT TO GRANTING ADEQUATE PROTECTION TO TD BANK CAN BE UTILIZED NOTWITHSTANDING THE TRO

25. As set forth above, the Debtor has approximately $1,200,000.00 on deposit at HSBC Bank. The Debtor deposits all of its collections from its account debtors into the HSBC account. The HSBC account is subject to the TRO, so without either the consent of the DA and/or TD Bank or the state court judge, the Debtor is unable to utilize the funds.

26. Although the funds in the HSBC account are currently restrained by the TRO, there should be little or no doubt that the funds are property of the estate. Under Article 13-A of the C.P.L.R., the pre-conviction restraint does not vest title of the monies and title only vests once proof of a crime is shown. In other words, the provisional remedy of attachment only "results in a freezing of defendants' assets and not a forfeiture." In re Wolfson, 261 B.R. 369, 374 (Bankr. E.D.N.Y. 2001).

27. As Bankruptcy Judge Grossman recently pointed out in In re Vitta, 2009 WL 604955 (Bankr. E.D.N.Y. 2009) there is nothing in the language of Article 13-A of the C.P.L.R. providing that title in the forfeited assets vests with the claiming authority as of the commission of the crime. As such, the forfeiture action violates the automatic stay and subject to providing adequate protection, the Debtor is entitled to utilize the funds. See, In re Chapman, 264 B.R. at 571.

28. The Debtor proposes that this Court hold a hearing as promptly as possible pursuant to Federal Rules of Bankruptcy Procedure 4001(b)(2) in order to accord the Debtor the use of cash collateral on an emergency basis in order to meet payroll and other necessary operating expenses pending a final hearing for the use of cash collateral. The Debtor estimates that between May 15, 2009 and May 30, 2009, it will need to utilize no more than $840,000.00 of TD Bank's cash collateral which includes the past due May 1, 2009 payroll. A copy of the Debtor's estimated cash

needs is annexed hereto as **Exhibit "A."** The Debtor believes that these cash needs represent sufficient cash to meet all post-petition operating expenses other than attorneys' fees.

29. The Debtor proposes that notice of the preliminary hearing and the final hearing pursuant to Federal Rules of Bankruptcy Procedure 4001(b) and §102(1), 105, and 363 of the Bankruptcy Code be given to TD Bank; the twenty (20) largest unsecured creditors as set forth on the list filed with the Debtor's Chapter 11 petition and the United States Trustee's Office for the Southern District of New York and the New York county District Attorney's Office by serving a copy of this Motion and exhibits and the scheduling order appended hereto by Federal Express or other similar overnight service, be deemed good and adequate notice under the circumstances.

30. No previous request for the relief requested herein has been made to this or any other court.

**WHEREFORE**, it is respectfully requested that a scheduling order be entered and that the ultimate relief sought herein both on an interim and on a final basis be granted together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 13, 2009

                                        **TARTER KRINSKY & DROGIN LLP**
                                        *Proposed Attorneys for Testwell, Inc.*
                                        *Debtor and Debtor-in-Possession*

                                      By: /s/ Scott S. Markowitz
                                             Scott S. Markowitz (SSM-0849)
                                             1350 Broadway, 11th Floor
                                             New York, New York 10018
                                             (212) 216-8000