**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Testwell, Inc.*
*Debtor and Debtor-in -Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re

TESTWELL, INC.

Debtor.

-------------------------------------------------------------x

Chapter 11

Case No. 09-22796 (RDD)

## DEBTOR'S RESPONSE IN OPPOSITION TO TD BANK, N.A.'S MOTION TO LIFT STAY AND/OR TO CONVERT CHAPTER 11 TO CHAPTER 7

TO: THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

Testwell, Inc., debtor and debtor-in-possession (the "Debtor"), by and through its counsel Tarter Krinsky & Drogin LLP, respectfully submits this response in opposition to TD Bank, N.A.'s ("TD Bank") motion to lift the automatic stay and/or to convert the Debtor's Chapter 11 case to a Chapter 7 case (the "Motion").

**PRELIMINARY STATEMENT**

The Motion must be denied solely on procedural grounds. Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure plainly provides that a motion to lift the automatic stay in a Chapter 11 case shall be served upon the twenty (20) largest unsecured creditors if a committee has not been appointed. The Motion was filed as opposition to the Debtor's motion to use cash collateral and to

pay pre-petition wages. The Motion was not served upon the twenty (20) largest unsecured creditors. The Debtor filed its list of twenty (20) largest creditors with its petition and TD Bank could have properly served the Motion, or at the very least, a notice of the Motion. TD Bank's only certificate of service (ECF #24) relates only to the exhibit supplement, and it too was not served in accordance with Rule 4001(a)(1). The purpose of Rule 4001(a)(1) is to afford other parties with notice of such extraordinary relief and an opportunity to be heard. Similarly, the Motion to convert is procedurally flawed as Rule 2002(a)(4) provides that notice of a motion to convert a Chapter 11 case to a Chapter 7 case must be served upon all creditors. The Debtor filed Schedule F listing all unsecured creditors prior to the Motion and the Court should deny the Motion to convert without prejudice to TD Bank's service in accordance with Rule 2002(a)(4).

Substantively, the Court should deny the Motion as TD Bank has failed to satisfy its burden either under §362(d)(1) or (d)(2). With respect to (d)(1), the Debtor has and can demonstrate that by granting TD Bank a replacement lien and making periodic adequate protection payments, TD Bank is adequately protected. Since the Filing Date, the Debtor has paid TD Bank $1,343,000.00, reducing its loan from approximately $4,000,000.00 to $2,650,000.00, exclusive of legal fees. TD Bank has the burden of proof on the lack of equity under §362(d)(2). The Debtor submits TD Bank has not and cannot carry its burden. The Debtor estimates the value of its collectable outstanding receivables are at least twice the amount owed to TD Bank without taking into account the value of the Debtor's machinery and equipment. In addition, the Debtor's receivables are necessary for the Debtor's reorganization. The Supreme Court has clearly held that during the exclusivity period, a debtor should be given more latitude on the issue of an effective reorganization. Here, the Debtor has retained an independent Chief Restructuring Officer and has taken steps to reduce its operating expenses to be in line with its reduced revenues. The Supreme Court has also clearly stated on more than one occasion that "the policy of Chapter 11 is to permit successful rehabilitation of debtors"

and the <u>fundamental</u> purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. Here, the Debtor's business has obviously not been the same as it was prior to the Indictmentss. However, through the Chapter 11 process and through the aegis of this Court, the Debtor should be given a fair opportunity to reorganize.

## **RELEVANT BACKGROUND**

1. On May 13, 2009, (the "Filing Date"), the Debtor filed a voluntary petition for reorganization under Title 11, Chapter 11, §301 of the United States Bankruptcy Code (the "Bankruptcy Code") and intends to continue in the operation of its business as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2. The Debtor is engaged in the controlled inspections and material testing business relating to the construction business. The Debtor has been in operation since 1967. Current ownership acquired the business in 1997. During the year ending December 31, 2008, the Debtor generated gross revenues of approximately $20,000,000.00. During the year ending December 31, 2007, the Debtor had gross revenues of approximately $24,000,000.00.

3. Prior to the Filing Date, the Debtor entered into two loans with Commerce Bank (which was acquired by TD Bank) which the Debtor utilized to fund its business operations. The Debtor has a term loan and a revolving loan. The original loan in the sum of $5,000,000.00 was made in 2003. In or about March 2006, this $5,000,000.00 loan was converted into a term loan. At that time, the amount outstanding was approximately $4,600,000.00.

4. In or about September 2007, the Debtor and TD Bank entered into a second loan agreement pursuant to which TD Bank agreed to make up to $2,500,000.00 of additional financing pursuant to a formula.

5. Both of the loans were secured by properly filed UCC-1's and the Debtor executed a

security agreement granting TD Bank a lien on substantially all of its assets including its accounts receivables. TD Bank was also granted a second mortgage on the real property located at 47 Hudson Street, Ossining, New York, where the Debtor operates its business. The loans were also personally guaranteed by the Debtor's sole shareholder, V. Reddy Kancharla ("Kancharla").

6. On October 30, 2008, the New York County District Attorney's Office ("DA's Office") announced that it had issued indictments (the "Indictments") charging the Debtor, Kancharla and other current and former employees with among other things, "enterprise corruption" in violation of New York Penal Law §420.201(1)(a), grand larceny, and falsifying business records. Both the Debtor and Kancharla pled not guilty and are vigorously contesting the allegations contained in the Indictments. A motion to dismiss the Indictments, in whole or in part, was scheduled to be heard by the criminal court on or about June 18, 2009. However, the criminal court judge advised the parties that all matters have been adjourned until July 1, 2009.

7. In connection with the Indictments, the DA's Office commenced a civil forfeiture action (pursuant to Article 13-A of the C.P.L.R.) against the Debtor in the Supreme Court, New York County (the "Forfeiture Action").

8. In the Forfeiture Action, the DA's Office obtained a temporary restraining order ("TRO") against Testwell, Kancharla, and others which restrained the Debtor's assets consisting of the proceeds of collection of its accounts receivable. The TRO also restrained TD Bank from exercising its Article 9 enforcement rights.

9. Since the Indictments, the Debtor has continued to operate its business on a reduced basis with limited oversight by the state court forfeiture judge and the DA's Office. Since November 2008, the Debtor funded its operations by submitting requests to the state court forfeiture judge for the release of ordinary operating expenses. Just prior to the Filing Date, the state court forfeiture judge signed an order which permitted the Debtor's secured lender to proceed with its

Article 9 enforcement rights. The Debtor is appealing this order.

10. Shortly after the Filing Date, the United States Trustee filed a motion pursuant to §1104(e) to appoint a Chapter 11 Trustee. The Debtor filed a motion to retain Harry Malinowski ("Malinowski") as Chief Restructuring Officer ("CRO"). This Court approved Malinowski's retention on an interim basis and denied without prejudice the United States Trustee's motion.

11. Since the Filing Date, the Debtor has been operating pursuant to consensual cash collateral stipulations with TD Bank which require the Debtor to provide daily reporting to TD Bank and provide for substantial adequate protection payments. Since the Filing Date, the Debtor has paid TD Bank the sum of $1,343,000.00. The current cash collateral stipulation expires on June 22, 2009.

12. The Debtor has timely filed all of its schedules and statement of financial affairs. Malinowski has been working at the Debtor's premises in Ossining on virtually a full-time basis and is currently working on a thirteen (13) week detailed budget which will reflect a potentially profitable business at revenues of $5,500,000.00 - $6,000,000.00. The Debtor continues to vigorously oppose the Indictments. Unfortunately, a hearing in the criminal court scheduled for June 18, 2009 was adjourned by the Court until July 1, 2009.

## TD BANK HAS NOT MET ITS BURDEN TO OBTAIN STAY RELIEF

13. In paragraph 40 of the Motion, TD Bank asserts that it should be granted stay relief on the ground "TD Bank's collateral is continuing to lose value, it is unclear as this time whether TD Bank is over-secured, and the Debtor has already had ample opportunity over the past six months (and under the supervision of other courts) to reorganize its business." This is not the standard for stay relief. The Debtor's pre-bankruptcy efforts to preserve its business are not relevant to whether this Court should grant stay relief. Rather, stay relief is governed by §362(d)(1) and

(d)(2) of the Bankruptcy Code.

14. In paragraph 46 of the Motion, TD Bank correctly points out that §362(d)(1) and (d)(2) are written in the disjunctive and a bankruptcy court must lift the stay if the movant prevails under either of the two grounds. In re Touloumis, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994). However, the Motion does not satisfy either (d)(1) or (d)(2).

15. With respect to (d)(2), TD Bank must establish (1) the amount of its claim; (2) its claim is secured by a valid perfected lien in property of the estate; and (3) that the debtor lacks equity in the property. See, In re Elmiro Litho, Inc., 174 B.R. 892 (Bankr. S.D.N.Y. 1994). Section 362(g) of the Bankruptcy Code provides that TD Bank has the burden of proof on the issue of the debtor's equity in property. Here, the Motion is devoid of any proof of lack of equity. In fact, TD Bank is owed approximately $2,650,000.00 and the Debtor has over $9,000,000.00 in accounts receivable. This does not include the value of the Debtor's machinery and equipment. Since TD Bank has not demonstrated a lack of equity, the Debtor need not demonstrate whether the property is necessary for an effective reorganization. See, In re Elmiro Litho, Inc., supra, Footnote 7. The Debtor notes that the ability to collect its accounts to fund its reorganization efforts is necessary to its reorganization efforts. The Debtor need not demonstrate that reorganization is probable or that a plan is already filed. Rather, the Debtor need only demonstrate there is a reasonable possibility of a successful reorganization within a reasonable time. See, In re Ash Grove Apartments of Dekalb County, Ltd., 121 B.R. 752 (Bankr. S.D. Ohio 1990); In re Ledgemere Land Corp., 125 B.R. 58 (Bankr. D. Mass 1990). Here, the Debtor will be able to demonstrate through testimony and recent operating history (post-indictment) that it can successfully reorganize and operate profitably on revenues of between $5,500,000.00 and $6,000,000.00.

16. With respect to §362(d)(1), the burden is a bit more amorphous. However, TD Bank must still demonstrate that the value of its collateral is declining as a result of the automatic stay.

See, In re Elmiro Litho, Inc., supra. Once TD Bank satisfies this initial burden, the burden shifts to the Debtor to prove that the collateral is not declining in value, or that TD Bank is adequately protected through periodic payments, equity cushion or replacement liens. Here, the Debtor submits (for similar reasons set forth in its cash collateral motion) that TD Bank is adequately protected. First, there is a significant equity cushion as TD Bank's claim is approximately $2,650,000.00 and the Debtor has approximately $9,000,000.00 in accounts receivable. Second, the Debtor has made adequate protection payments of $1,343,000.00 in the first thirty (30) days of the Chapter 11 case. Third, the Debtor is prepared to grant TD Bank a replacement lien on its newly generated accounts. Fourth, the Debtor's projections and recent operations reflect that the Debtor can operate at a break-even level based upon approximately $500,000.00 per month in revenues. Based upon the above, the Debtor submits TD Bank is adequately protected and the Court must deny relief under §362(d)(1).

## TD BANK HAS NOT ESTABLISHED CAUSE FOR CONVERSION

17.　　TD Bank's request for conversion amounts to little more than a claim that the Court cannot permit an indicted company to attempt to reorganize. TD Bank does not explain why the Debtor's reorganization efforts are doomed to fail. Although §1112(b) was amended in 2005, the Court still has considerable discretion to fashion relief. See, 1031 Tax Group, LLC, 374 B.R. 78 (Bankr. S.D.N.Y. 2007). A bankruptcy court must always be mindful of the fact that Chapter 11 was designed to provide economically distressed entities with a mechanism for rehabilitating. See, In re Austin Ocala, Ltd., 150 B.R. 279 (Bankr. M.D. Fla. 1993). "A court should not precipitously sound the death knell for a debtor by prematurely determining that a debtor's prospects for economic revival are poor." In re Shockley Forest Industries, Inc., 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980). Given the rehabilitative purpose of Chapter 11, all doubts are to be resolved in favor of the debtor. In re Macon Prestressed Concrete Co., 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986).

18. Here, TD Bank cannot possibly establish substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. The Debtor has been in Chapter 11 for approximately thirty (30) days and appears to be operating at or close to a break-even level. In addition, the Debtor has been recently advised by representatives of the New York City Department of Buildings that its concrete testing license, which expires on June 17, 2009, is "pending," which enables the Debtor to continue performing concrete testing work. The Debtor is in the process of reviewing all aspects of its operations and will continue to reduce operating expenses where feasible. The Debtor will continue to vigorously fight the Indictments. The evidence adduced at the cash collateral hearing indicates that notwithstanding the Indictments, the Debtor continues to do business with agencies of the City of New York.

19. Since the Debtor's Chapter 11 case is in its early stage, TD Bank must show that there is no more than a "hopeless and unrealistic prospect" of rehabilitation. In re Economy Cab & Tool, Inc., 44 B.R. 721, 724 (Bankr. D. Minn. 1984); In re Adbrite Corp., 290 B.R. 209 (Bankr. S.D.N.Y. 2003). For the reasons set forth above and which will be adduced at an evidentiary hearing on this Motion, the Debtor submits that the Court should deny TD Bank's request for conversion.

**WHEREFORE**, the Debtor respectfully requests that the Court deny TD Bank's Motion and grant the Debtor such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 17, 2009

      **TARTER KRINSKY & DROGIN LLP**
      *Proposed Attorneys for Testwell, Inc.*
      *Debtor and Debtor-in-Possession*

      By: /s/ Scott S. Markowitz
          Scott S. Markowitz (SSM-0849)
          1350 Broadway, 11th Floor
          New York, New York 10018
          (212) 216-8000